IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HEMA BURKE                              :
        Plaintiff        :
                         :
  v.                                    :  3:CV-07-1186
                         :  (JUDGE VANASKIE)
HEMLOCK FARMS COMMUNITY                 :
ASSOCIATION                             :
        Defendant        :

MEMORANDUM

Plaintiff, Hema Burke, brought this action against neighboring land owner Hemlock Farms Community Association ("Hemlock") based on damages sustained to her property as a result of flooding caused by inadequate drainage on Hemlock's property. Plaintiff's three-count complaint alleges entitlement to damages based on theories of negligence, trespass, and nuisance. Defendant has filed a motion for summary judgment. (Dkt. 23.)[1] Because there are genuine issues of material fact as to whether Plaintiff's property is an open woodland and whether Defendant has artificially channeled water onto Plaintiff's property, Defendant's Motion for Summary Judgment based upon an easement by prescription or by implication will be denied. Moreover, as physical damage has arguably occurred on Plaintiff's land, and the

---

[1] For the convenience of the reader of this Memorandum opinion in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. The Court accepts no responsibility for, and does not endorse, any product, organization, or content at any hyperlinked site, or at any site to which that site might be linked. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

continuing injury doctrine applies, Defendant's private nuisance and statute of limitations challenges are unavailing.

I. BACKGROUND[2]

Plaintiff, Hema Burke, acquired her interest in the subject property upon the death of her husband, James B. Burke, on February 24, 1999. (Defendant's Statement of Undisputed Material Fact ("DSUMF"), Dkt. 25, at ¶ 4.) The subject property consists of approximately eighteen (18) acres in Blooming Grove Township, is adjacent to the Hemlock Farms Community, and has some frontage on Route 739. (Burke Dec., Dkt. 29-3, at ¶ 5.) Plaintiff has never resided on the subject property and currently resides in Arizona. (Id. at ¶ 4.)

In general, some portions of Defendant's land is up slope of the subject property. (Plaintiff's Statement of Undisputed Material Fact ("PSUMF"), Dkt. 29, at ¶ 10.) The subject property "rises modestly from front to rear with a sideway slope from west to east." (Henkelman, Dkt. 29-6, at 27.) Plaintiff describes her property as "heavily wooded and overgrown with mature trees, shrubs, and bushes." (Burke Decl., Dkt. 29-3, at ¶ 6; see Burke

---

[2] The background has been gathered from the parties' depositions, Defendant's Response to Request for Admissions, Plaintiff's Declaration, and an appraisal of the subject property. The Court notes that in violation of Local Rule 56.1, Defendant has failed to provide any citation to the record in its Motion for Summary Judgment or Statement of Undisputed Material Facts. Local Rule 56.1 provides: "Statements of material fact in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements." Local Rule 56.1. Although Defendant's failure, in and of itself, is enough for this Court to deny summary judgment, a merits analysis will be undertaken.

Dep., Dkt. 29-4, at 11.) An appraisal of the property conducted by William R. Henkelman describes the property as consisting "mainly of woodland." (Henkelman, Dkt. 29-6, at 27.) To the best of Plaintiff's knowledge, no portion of the subject property has been enclosed by a fence, wall, or other structure. (Burke Dec., Dkt. 29-3, at ¶ 8.)

A nearby storm water culvert discharges water onto a lot owned by a member of Hemlock Farms Community and then flows across that lot and two adjacent Hemlock lots before it reaches the subject property. (Nov. 25, 2005 Letter, Dkt. 29-8, at 41.) The culvert "deposits surface water on an area of this parcel near the rear adjacent corner to the road of the [subject property]. . . . . The exact additional land affected by the culvert is difficult to calculate." (Henkelman, Dkt. 29-6, at 28.) The Manager of Hemlock, Mike Sibio, was unable to say when the culvert that traverses under Hemlock Farms Road and ends near Plaintiff's property was installed or constructed. (Sibio Inter., Dkt. 29-9, at 5.) During the course of Plaintiff and her husband's ownership of the subject property, Hemlock never asked permission to discharge water from the culvert onto the subject property. (Burke Dep., Dkt. 29-4, at 11, 13.)

Defendants aver that no sedimentation or erosion exists on the property as a result of the storm water culvert. (Nov. 25, 2005 Letter, Dkt. 29-8, at 41.) Plaintiff, however, disagrees, averring that there was sedimentation and erosion. (Burke Dep., Dkt. 29-4, at 14.)

Plaintiff indicated that she had spoken to Mr. Sibio about the problem and that he indicated that Hemlock was going to "implement a storm water plan to fix the problem." (Burke

3

Dep., Dkt. 29-4, at 12.)

Hemlock has developed at a significant rate over the last 19 years. (Answers to Req. For Admission, June 27, 2008, Dkt. 29-7.) Between 1985 and 2007, an additional 1,347 homes were added to the Hemlock Farms Community. (Id.) As Hemlock continued to build, however, it did not undertake "any construction activities or any activities to handle the increased runoff." (Vandercar Dep., Dkt. 29-8, at 12.) During the past 11 years, Hemlock has taken no steps to ensure that the rate of storm water runoff does not increase. (Id. at 10.) Hemlock's Director of Public Works, Robert Vandercar, admitted that "[w]hen the residential development of Hemlock Farms was originally planned, the implementation of storm water controls was almost an afterthought." (Id. at 15.)

Vandercar indicated that after receiving Plaintiff's complaint, he reviewed the area "to see if there was a way we could remove that pipe," and determined that they could remove the culvert but that water was still going to end up on Plaintiff's property based on the contours of the land. (Id.) When asked whether the storm water that is discharged from the culvert pipe flows onto Plaintiff's property, Vandercar responded: "It flows. I can't say it flows on her property. I never witnessed it flowing on her property. It flows in that direction, but I can't say it flows on her property." (Id. at 18.)

Plaintiff filed a complaint in this Court on June 29, 2007, seeking damages under negligence, trespass, and nuisance theories of liability. (Comp., Dkt. 1.) Discovery was

4

completed on August 31, 2008, and on September 30, 2008, Defendant filed the current motion for summary judgment. The briefing period has expired and the motion is ripe for review.

## II. DISCUSSION

### A. Standard of Review

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). "Facts that could alter the outcome are material facts." Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 197 (3d Cir. 1994). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Initially, the moving party must show the absence of a genuine issue concerning any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its burden, the nonmoving party "must present affirmative evidence in order to defeat a

properly supported motion for summary judgment." Anderson, 477 U.S. at 257. Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). Rule 56 requires the entry of summary judgment if there was adequate time for discovery and a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Defendant advances five bases for its motion for summary judgment: 1) Defendant has acquired an easement by prescription; 2) Defendant has acquired an easement by implication; 3) Plaintiff has failed to state a claim upon which relief can be granted; 4) Plaintiff's trespass claims are barred by the applicable statute of limitations; and 5) Plaintiff's claims for diminution of property value must be dismissed. The Court will examine each of these claims in turn.

B.  Statute of Limitations

Defendant argues that Plaintiff's claims are barred by the applicable two-year statute of limitations. In support of this proposition, Defendants cite only Sustrik v. Jones & Laughlin Steel Corp., 197 A.2d 44 (Pa. 1964). (Supp. Br., Dkt. 24, at 6.)

In Sustrik, the Pennsylvania Supreme Court found that the statute of limitations barred recovery for unlawful trespass based on the installation of an underground sewer line that drained water across the plaintiff's property, because the pipe had been installed over forty

years before the action was brought.  Sustrik, 197 A.2d at 46.  The court distinguished a continuing trespass from a trespass that effects a permanent change in the condition of land, finding that in the plaintiff's situation, the pipe created a permanent nuisance that would continue indefinitely and, consequently, the statute of limitations began to run when the action first occurred.  Id. at 47.

The court in Graybill v. Providence Twp., 593 A.2d 1314, 1316 (Pa. Cmwlth. Ct. 1991), however, distinguished the facts in Sustrik and found a continuing trespass:

> The facts of Sustrik involved injury similar to the examples given in both Restatements for a trespass that causes a permanent change: an entry onto the land of another and an affirmative act, such as an excavation, producing a permanent change to that land itself.  The allegations of the present case concern acts of construction by the defendant Findleys upon their own land.  Those acts did not directly and immediately cause any injury to Graybill's land; rather, those acts, coupled with the effects of rainfall, allegedly resulted in consequential damage to Graybill.

Graybill, 593 A.2d at 1316.

"Courts have uniformly based their holdings, concerning when the statute began to run, on the distinction between permanent change . . . versus continuing trespass . . . ." Id. (citation omitted).  In determining whether a continuing trespass has occurred, courts review "the ascertainability or predictability of the injury involved (i.e., whether it is possible for the plaintiff to calculate all of his future damages in one action), and the question of the regularity of the incidents of overflow (i.e., whether the incidents happen frequently and predictably or only intermittently)."  Id. at 1316-17.  As explained in Graybill:

> "The term 'permanent,' as here used, 'has reference not alone to the character of the structure or thing which produces the alleged injury, but also the character of the injury produced by it. In other words, the structure or thing producing the injury may be as permanent and enduring as the hand of man can make it; yet if the resulting injury be temporary or intermittent, depending on future conditions which may or may not arise, the damages are continuing, and successive actions will lie for successive injuries.'"

593 A.2d at 1317 (quoting Archer v. J.S. Compton, Inc., 30 N.W.2d 92, 96 (Ia. 1947)). Consistent with the analysis in Graybill, the court in Miller v. Stroud Twp., 804 A.2d 749 (Pa. Cmwlth. 2002), found that a continuing trespass had been pled based on the construction of a sewer line "coupled with the effects of rainfall, resulting in a continuing trespass of water . . ., which caused damage" to the plaintiff's property. Id. at 754.

Because there are facts to support the conclusion that the storm water culvert, coupled with the effect of rainfall, result in intermittent harm, there is at least a question of fact as to the applicability of the continuing trespass doctrine. Accordingly, Defendant is not entitled to summary judgment on statute of limitations grounds. See Graybill, 593 A.2d at 1317.

C. The Private Nuisance Cause of Action

Defendant argues that Plaintiff's private nuisance claim is without merit. (Supp. Br., Dkt. 24, at 9.) "This Commonwealth follows the Restatement (Second) of Torts' formulation of private nuisance. The Restatement defines a private nuisance as 'a nontrespassory invasion of another's interest in the private use and enjoyment of land.'" Golen v. Union Corp., 718 A.2d 298, 300 (Pa. Super. Ct. 1998) (citation omitted).

Defendant argues that diminution in property value is not a kind of harm compensable under a private nuisance action, and that Plaintiff must show that her use and enjoyment of the land has been affected adversely. Because Plaintiff does not reside on or otherwise occupy the property, Defendant contends that she cannot maintain an action for private nuisance.

In Golen, the court held that where there is no damage to the plaintiff's land, an action in private nuisance cannot be maintained for the alleged loss of property value attributable to the condition of the defendant's property. Id. at 301. In the course of its holding, the court ruled that "private nuisance only recognized injuries that require physical presence on the property in order to be perceived." Id. at 300. In support of this ruling, the court observed that the tort of private nuisance protects against harm "within the confines of uses of land that arise while occupying property." Id.

There is no dispute in this case that Plaintiff has never occupied the property. It does not follow, however, that diversion of water onto her land does not affect her use and enjoyment of her land. The rule in Golen only addresses the scenario where there is no physical harm to the plaintiff's property and there is no harm that may be perceived while occupying the plaintiff's property, such as an adjoining landowner's excessive noise or brilliant lights. Where, however, there is physical harm to the plaintiff's property, her presence to observe the harm is not the sine qua non of a private nuisance action. In this regard, Comment b to the Restatement (Second) of Torts § 821D explains:

> The phrase "interest in the use and enjoyment of land" is used in this Restatement in a broad sense. It comprehends not only the interests that a person may have in the actual present use of land for residential, agricultural, commercial, industrial and other purposes, <u>but also his interests in having the present use value of the land unimpaired by changes in its physical condition</u>. Thus the destruction of trees on vacant land is as much an invasion of the owner's interest in its use and enjoyment as is the destruction of crops or flowers that he is growing on the land for his present use. [Emphasis added.]

Restatement (Second) of Torts § 821D comment b. That private nuisance encompasses the averments of Plaintiff's complaint is also suggested by Comment e to § 821D, which notes that "the flooding of the plaintiff's land, which is a trespass, is also a nuisance if it is repeated or of long duration. . . ." Restatement (Second) of Torts § 821D comment e. Accordingly, Plaintiff's status as an absentee landowner does not foreclose a private nuisance cause of action.

Defendant argues that Plaintiff cannot measure her damages based upon diminution in property value because she cannot show that the harm caused is permanent. "The measure of damages for injury to real property depends upon the permanency of the injury." Duquesne Light Co. v. Woodland Hills Sch. Dist., 700 A.2d 1038, 1052 (Pa. Cmwlth. Ct. 1997). The Pennsylvania Superior Court has defined "permanent injury" as "one which is 'unequivocally beyond repair.'" Id. at 1053 (quoting Kirkbride v. Lisbon Contractors, Inc., 560 A.2d 809, 812 (Pa. Super. Ct. 1989)). "Whether or not an injury to real property is 'permanent' is an issue for the trier of fact." Id.; Vassell v. Travis, Civ. A. No. 04-1313, 2007 WL 2571634, at *4 (E.D. Pa. Aug. 31, 2007); Chubb v. On-Time Wildfire Feeders, Civ. A. No. 1:CV-06-0488, 2009 WL 424218, at *1 (M.D. Pa. Feb. 19, 2009). Because the issue of permanence is an issue for a

jury, Defendant's Motion for Summary Judgment based on the contention that Plaintiff has failed to prove permanency of the damages must be denied. See Duquesne Light Co., 700 A.2d at 1053.

D. Easement by Prescription

Defendant asserts that it has established an easement by prescription based on open, notorious, adverse, and uninterrupted discharge of storm water onto Plaintiff's property for the past twenty-one (21) years. (Supp. Br., Dkt. 24, at 2.) Plaintiff counters this argument by pointing to a Pennsylvania statute that forecloses creation of easements by prescription in certain circumstances.

Section 411 of Title 68 of the Pennsylvania Statutes provides:

> No right of way shall be hereafter acquired by user, where such way passes through uninclosed woodland; but on clearing such woodland, the owner or owners thereof shall be at liberty to enclose the same, as if no such way had been used through the same before such clearing or enclosure.

68 P.S. § 411.

"Even where the factors necessary to obtain a prescriptive easement have been established, it is well settled that the acquisition of a prescriptive easement through unenclosed woodlands is prohibited by 68 P.S. § 411." Tricker v. Pennsylvania Turnpike Comm'n, 717 A.2d 1078, 1083 (Pa. Cmwlth. Ct. 1998). The character of the subject property is determinative of the application of section 411. Humberston v. Humbert, 407 A.2d 31, 32 (Pa. Super. Ct. 1979). Plaintiff has presented evidence that the subject property is primarily woodlands (Burke

Decl., Dkt. 29-3, at ¶ 6; Burke Dep., Dkt. 29-4, at 11; Henkelman, Dkt. 29-6, at 27), and is unenclosed (Burke Dec., Dkt. 29-3, at ¶ 8). At a minimum, Plaintiff has established a genuine dispute of fact material to the application of 68 P.S. § 411. Accordingly, Defendant's Motion for Summary Judgment averring creation of a prescriptive easement will be denied.

E. Easement by Implication

Defendant's final argument is that it has obtained an easement by implication on the theory that the owner of higher land is not liable to the owner of lower lying land based on damages that have naturally been caused by water flowing from one level to another. (Supp. Brief, Dkt. 24, at 4.) Plaintiff, however, disagrees, arguing that Defendant has significantly increased the amount of water discharged onto her property based on use of an artificial drainage pipe.

> [A] landowner may not alter the natural flow of surface water on his property by concentrating it in an artificial channel and discharging it upon the lower land of his neighbor even though no more water is thereby collected than would naturally have flowed upon the neighbor's land in a diffused condition.

Woodbine Auto, Inc. v. Southeastern Pennsylvania Transp., 8 F. Supp. 2d 475, 478 (E.D. Pa. 1998); Leiper v. Heywood-Hall Const. Co., 113 A.2d 148, 150 (Pa. 1955); Ridgeway Court, Inc. v. Landon Courts, Inc., 442 A.2d 246, 247-48 (Pa. Super. Ct. 1981); Rau v. Wilden Acres, Inc., 103 A.2d 422, 423 (Pa. 1954).

> It is well-settled law that the right of the upper landowner to discharge water on the lower land of his neighbor is, in general, a right of flowage only, in the natural ways and natural quantities. If he alters the natural condition so as to change the

12

> course of the water, or to concentrate it at a particular point, or by artificial means to increase its volume, he becomes liable for any injury caused thereby.

McCormick Coal Co. v. Schubert, 108 A.2d 723, 724 (Pa. 1954) (citation omitted).

Plaintiff has presented evidence that Defendant has channeled storm water and directed the discharge at her property. Because there is some evidence that Defendants installed a drainage pipe which arguably has caused damage to Plaintiff's property, Defendant's Motion for Summary Judgment will be denied. See Woodbine Auto, Inc., 8 F. Supp. 2d at 478.

## III. CONCLUSION

For the above-stated reasons Defendant's Motion for Summary Judgment (Dkt. 23), will be denied. An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HEMA BURKE                              :
         Plaintiff         :
                           :
  v.                                    :  3:CV-07-1186
                           :  (JUDGE VANASKIE)
HEMLOCK FARMS COMMUNITY   :
ASSOCIATION                             :
         Defendant         :

## ORDER

NOW THIS 28th DAY OF OCTOBER, 2009, for the reasons set forth in the foregoing Memorandum, IT IS HEREBY ORDERED THAT:

    1. Defendant's Motion for Summary Judgment (Dkt. 23) is DENIED.

    2. A telephone scheduling conference will be held on Monday, November 23, 2009, at 9:00 a.m. Plaintiff's counsel is responsible for placing the call to (570) 207-5720, and all parties should be ready to proceed before the undersigned is contacted.

                                                s/ Thomas I. Vanaskie
                                                Thomas I. Vanaskie
                                                United States District Judge